UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

CHRISTOPHER CORTAZZO        :    CIVIL ACTION
                            :
    v.                      :
                            :    No. 14-2513
CITY OF READING, et al.     :
_____

**MEMORANDUM OPINION**
(Plaintiff's Motion for a Preliminary Injunction and Defendants'
Motion to File Certain Documents and Associated Pleadings Under Seal)

Joseph F. Leeson, Jr., J.                                March 25, 2015

### A.    INTRODUCTION

Plaintiff Christopher Cortazzo has been employed by the Reading Police Department as a police officer since 2001. On May 1, 2014, he commenced this action against the City of Reading, Chief William M. Heim and Officer Madison Winchester, alleging civil rights violations in connection with his employment. Plaintiff now moves for a preliminary injunction, requesting an evidentiary hearing and an order enjoining defendants from pursuing disciplinary action against plaintiff. In connection with their opposition to the motion for preliminary injunction, defendants move to file certain documents and associated pleadings under seal. Defendants' motion will be granted in part, and plaintiff's motion will be denied.

1

**B.     FACTS**

According to plaintiff, defendants have started a "Mayor's Level Pre-Disciplinary Meeting" regarding discipline pending against plaintiff. Plaintiff's memorandum, doc. no. 24, at 4. Plaintiff has been suspended without pay pending those proceedings. Id. Plaintiff contends that the current disciplinary proceedings were commenced in retaliation for plaintiff's filing of this lawsuit and in an effort to secure plaintiff's termination. Id. Plaintiff asks that the disciplinary proceedings be enjoined pending resolution of his civil rights case.

According to defendants, plaintiff's employment is subject to the terms of a Collective Bargaining Agreement negotiated between his union, the Fraternal Order of Police, Lodge # 9, and the City of Reading. *See* "2012 to 2016 Collective Bargaining Agreement Between the City of Reading and the Fraternal Order of Police, Lodge #9," Exhibit A to defendants' memorandum, doc. no. 26. During the course of plaintiff's employment, more specifically, during the period beginning in May 2013 and ending in November 2013, plaintiff engaged in a course of unacceptable conduct, culminating in the issuance of a recommendation by Chief Heim that plaintiff be terminated from the department. *See* November 21, 2013 Memorandum, detailing Specification of Charges, Exhibit B to defendants' memorandum, doc. no. 26. The Mayor approved the recommendation for termination. *See* December 13, 2013 Memorandum, addressing recommendation, Exhibit C to defendants' memorandum, doc., no. 26. According to defendants, plaintiff, through his union, then negotiated a confidential employment agreement with the City of

Reading which resolved the prior charges of misconduct and permitted plaintiff to return to work. Defendants' memorandum at 4.

Plaintiff returned to work in January 2014 and promptly began incurring further disciplinary violations. These were enumerated in memoranda from Chief Heim signaling the commencement of disciplinary proceedings against plaintiff in late March, 2014, which resulted in a second recommendation that plaintiff's employment be terminated. *See* March 26, 28, and 31, 2014 Memoranda, detailing Specification of Charges, Exhibits D through H to defendants' memorandum, doc. no. 26. In March 2014, plaintiff took FMLA leave and the disciplinary proceedings against him were suspended pending his return from leave. Defendants' memorandum at 5. In September 2014, plaintiff returned from leave. In December 2014, disciplinary proceedings were resumed and plaintiff's termination formally recommended. *See* December 10, 2014 Memoranda, Exhibit I to defendants' memorandum, doc. no. 26. By letter dated December 12, 2014, plaintiff was advised, *inter alia*, that the Mayor had approved the recommendation that plaintiff's employment be terminated, that plaintiff was suspended without pay, effective immediately, and that plaintiff had the right under the January 7, 2014 agreement signed by plaintiff, the City of Reading, and FOP Lodge #9 to submit the decision to terminate to arbitration. *See* December 12, 2014 letter, Exhibit J to defendants' memorandum, doc. no. 26. Plaintiff, through his union, exercised his contractual right to arbitrate the decision to terminate his employment. *See*

December 15, 2014 letter, Exhibit J. to defendants' memorandum, doc. no. 26. On December 14, 2014, plaintiff filed this motion for preliminary injunction.

**C.      DISCUSSION**

    **1.      Defendants' Motion to File Documents Under Seal**

Defendants move to file the following documents and pleadings under seal: (1) defendants' response in opposition to plaintiff's motion for preliminary injunction and supporting memorandum (doc. no. 26); (2) any exhibits thereto; and (3) an employment agreement entered into between the City of Reading and plaintiff, through his union, Fraternal Order of Police Lodge #9. The response to plaintiff's motion and supporting memorandum, as well as extensive exhibits attached thereto, were NOT filed under seal originally in December 2014 and they remain unsealed. The exhibits include various documents related to disciplinary proceedings against plaintiff. *See* exhibits to doc. no. 26. Defendants have not included as an exhibit the referenced employment agreement. According to defendants, the employment agreement governing the terms of plaintiff's employment post-2013 disciplinary proceedings is confidential and the parties are prohibited from disclosing its terms. If defendants reveal some or all of the terms of the agreement, they will be subject to consequences as set forth in the agreement. Defendants' memorandum at 5, doc. no. 25. It is of note that: (1) plaintiff participated in the negotiation of this agreement through his union, and (2) plaintiff does not dispute that the terms of the agreement are confidential or that disclosure of the terms could subject defendants to discipline. *See* plaintiff's memorandum

4

in opposition, doc. no. 27. It appears that the interested parties – plaintiff and defendants – contemplated that the terms of the employment agreement would remain confidential. Plaintiff opposes defendants' motion.

It is well-settled that there exists a common law right to public access to judicial proceedings and records. *In re Cendant Corp.*, 260 F.3d 183, 192 (3d Cir. 2001). The right is presumptive, however, and not absolute. *Leucadia, Inc. v. Applied Extrusion Tech., Inc.*, 998 F.2d 157, 165 (3d Cir. 1993) ("[T]here is a presumptive right to public access to all material filed in connection with nondiscovery pretrial motions . . ."); *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1071 (3d Cir. 1984) (recognizing First Amendment and common law right to access, but finding "[t]he trial court may limit this right, however, when an important countervailing interest is shown.") The party seeking to seal a judicial record, however, bears a heavy burden of showing good cause, and must show that "disclosure will work a clearly defined and serious injury to the party seeking closure." *Miller v. Indiana Hosp.*, 16 F.3d 549, 551 (3d Cir. 1994).

Defendants argue that they risk contractually negotiated consequences if they disclose the terms of the confidential employment agreement, and for this reason have not, as yet, used it in this litigation. They do, however, anticipate requiring the document to defend against plaintiff's claims. Given that plaintiff does not challenge the confidential nature of this document, or that consequences accompany disclosure of its confidential terms, I find that defendants have satisfactorily shown that disclosure of the terms of the agreement will work a clearly defined and serious injury to defendants. *Miller*,

*supra.* As such, defendants will be permitted to file the employment agreement under seal.

As to the pleadings and disciplinary records already docketed, which disclose certain information concerning disciplinary proceedings against plaintiff, defendants offer no such compelling argument. As such, given the strong presumption in favor of access, defendants' motion to seal their response and memorandum in opposition to plaintiff's motion for preliminary injunction (doc. no. 26), and accompanying exhibits, is denied. If at some future time in this litigation defendants are able to articulate a specific harm that will result from disclosure of the information contained in these or other court filings, defendants may file a new request to seal.

    2.    **Plaintiff's Motion for Preliminary Injunction**

        **(a)**    **Standard of Review**

A "preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong,* 520 U.S. 968, 972 (1997). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7, 20 (2008). A plaintiff must establish every element in his or her favor – failure to establish even one element renders a preliminary injunction inappropriate. *P.C. Yonkers, Inc. v. Celebrations the Party Seasonal*

*Superstore, LLC*, 428 F.3d 504, 508 (3d Cir. 2005); *NutraSweet Co. v. Vit-Mar Enterprises, Inc.*, 176 F.3d 151, 153 (3d Cir. 1999).

### (b) **Analysis**

According to defendants, plaintiff cannot show that he will suffer irreparable harm if his request for an injunction is denied. "In order to demonstrate irreparable harm the plaintiff must demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial. The preliminary injunction must be the only way of protecting the plaintiff from harm." *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989) (citations omitted). "'[A] failure to show a likelihood of success or a failure to demonstrate irreparable injury must necessarily result in the denial of a preliminary injunction.'" *Instant Air*, 882 F.2d at 800, quoting *In re Arthur Treacher's Franchise Lit.*, 689 F.2d 1137, 1143 (3d Cir. 1982).

Here, plaintiff seeks to enjoin disciplinary proceedings that may result in the termination of his employment. However, at this time, plaintiff's fear of termination is speculative in view of the arbitration proceedings, which may conclude in his favor. "The risk of irreparable harm must not be speculative." *Adams v. Freedom Gorge Corp.*, 204 F.3d 475, 488, (3d Cir. 2000), citing *Acierno v. New Castle Cty.*, 40 F.3d 645 (3d Cir. 1994). Moreover, even if the arbitration concludes in favor of the City of Reading, and plaintiff's employment is terminated, the pending lawsuit provides plaintiff with a means of obtaining compensation for losses resulting from any improper conduct on defendants' part at a later date. "The possibility that adequate compensatory or other

corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Instant Air*, 882 F.2d at 801 (citations omitted). Finally, plaintiff asserts that he will suffer irreparable harm to his "emotional state, his career and his financial security" if no injunction is granted. Plaintiff's memorandum at 2, doc. no. 24. None of these, however, constitutes irreparable injury. *See, e.g., Morton v. Beyer*, 822 F.2d 364, 371-72 and 373 n.13 (3d Cir. 1987) (loss of income alone does not constitute irreparable injury; damage to name and reputation as a result of a suspension – in contrast to loss of license - insufficient to constitute irreparable harm); *Shea v. Mountain View Sch. Dist.*, 2014 WL 3590006, at *6 (M.D. Pa., Jul. 24, 2014)("impairment" in obtaining replacement or future employment resulting from removal from position insufficient to constitute irreparable harm).

It is not necessary to address any of the remaining factors for a preliminary injunction in light of plaintiff's failure to show the likelihood of irreparable harm. It is, however, of note that plaintiff's first amended complaint has been dismissed, without prejudice to replead. This calls into question plaintiff's ability to demonstrate a likelihood of success on the merits, and renders inappropriate an award of an injunction. *See Instant Air, supra*, at 800. Plaintiff's motion for preliminary injunction must be denied and, as a result, so must his request for an evidentiary hearing. *Bradley v. Pittsburgh Bd. of Educ.*, 910 F.2d 1172, 1176 (3d Cir. 1990) ("[A] district court is not obliged to hold a hearing [on a motion for preliminary injunction] when the movant has not

presented a colorable factual basis to support the claim on the merits or the contention of irreparable harm.").

An order accompanies this memorandum.

BY THE COURT:


*/s/ Joseph F. Leeson, Jr.*  
JOSEPH F. LEESON, JR., J.