## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

_____

CHRISTOPHER CORTAZZO                       :
                    Plaintiff,          :          No. 5:14-cv-2513
           v.                         :
                                 :
CITY OF READING and WILLIAM HEIM,          :
                 Defendants.            :

_____

## MEMORANDUM
### Defendants' Motion to Dismiss, ECF No. 34- Granted in Part & Denied in Part

**Joseph F. Leeson, Jr.**                                          **March 14, 2016**
**United States District Judge**

## I.      INTRODUCTION

Plaintiff initiated this action on May 1, 2014, by filing a Complaint.  He filed an Amended Complaint on June 16, 2014, and a Second Amended Complaint on April 13, 2015. Plaintiff asserts a claim of Disparate Treatment and Retaliation under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 ("Section 504"), and of Interference and Retaliation under the Family and Medical Leave Act, 29 U.S.C. §§ 2601-2654 ("FMLA"), based on Defendants' alleged adverse employment actions in response to Plaintiff's alleged disability and request for accommodation and FMLA qualified leave.  Second. Am. Compl., ECF No. 33.  Defendants filed a Motion to Dismiss on April 27, 2015, ECF No. 34.  For the reasons set forth below, the Motion will be granted in part and denied in part.

## II.      BACKGROUND

### A.    *Factual Allegations*

The Complaint alleges that on or about January 16, 2001, Plaintiff was hired as a police officer for the Reading Police Department.  Second Am. Compl. ¶ 15.  The first incident Plaintiff

complains of occurred in October 2010, when he was allegedly yelled at for preparing a police report regarding his discovery of marijuana in a suspect's home and was told to rewrite the report.  Id. ¶¶ 17-24.  Next, Plaintiff alleges that in October 2011, he reported being treated disrespectfully by Sergeant Don Sheidy and was advised by other officers that in the previous months they had heard many negative comments about him.  Id. ¶¶ 25-31.  He then alleges that on February 16, 2012, he attempted to stop an individual appearing to be a juvenile in a high crime area after 10:00 p.m., but the individual fled into a residence.  Id. ¶¶ 37-40.  He forced open the door, the individual allegedly resisted arrest, and was charged.  Id. ¶¶ 41-42.  Plaintiff complains that the charges were subsequently withdrawn at the request of Captain Powell and Lieutenant Klok, which subjected him to civil liability and resulted in a five-day suspension.  Id. ¶¶ 43-54.  Plaintiff alleges that on April 18, 2012, he made a written complaint about these and other incidents, but his report was deleted.  Id. ¶¶ 32-36.

Plaintiff alleges that in July 2013, Defendant Chief Heim and Captain Powell raised concerns about his bad attitude and recent behavior and asked him to see the Department's psychologist.  Id. ¶¶ 55-60.  Plaintiff alleges that when he finally saw the psychologist on October 1, 2013, he was advised it was for a "Fit for Duty Exam."  Id. ¶¶ 61-67.  Plaintiff alleges that he was "very embarrassed and humiliated by the incident."  Id. ¶ 66.  Next, Plaintiff alleges that on November 5, 2013, he encountered a truck in a loading zone where the occupants were having a pizza party and a juvenile had his pants down exposing his underwear.  Id. ¶¶ 70-73.  Plaintiff alleges that after the juvenile refused to pull up his pants, he arrested the juvenile for Disorderly Conduct, but that two days later Lieutenant Winters ordered Plaintiff to withdraw the ticket.  Id. ¶¶ 74-82.  The following day, Defendant Chief Heim issued a memo stating that

Plaintiff made an unlawful arrest and reassigned him to the video surveillance unit, known as administrative duty.  Id. ¶¶ 83-87.

Plaintiff alleges that in March 2014, he "attempted to take 'stress leave,'" but "Defendants continued to harass Plaintiff while he was utilizing time Defendants knew or should have known was qualified time under the Family and Medical Leave Act ("FMLA")."  Second Am. Compl. ¶¶ 88-89.  Plaintiff alleges that when he returned to work on September 29, 2014, he was not restored to his original position, he was not permitted in the squad room or any area other than the video surveillance unit, he was not permitted to access work computers, his shift was changed, he was no longer entitled to overtime, he was not permitted to take any police action without approval, and he was suspended after an attempted mediation, all in violation of the FMLA.  Id. ¶¶ 90-97.  Plaintiff alleges that the actions were taken because Defendants regarded him as disabled, in retaliation for taking the accommodated stress leave, and for invoking FMLA leave.  Id. ¶ 98.

### B.    *Procedural History*

Plaintiff filed a Complaint on May 1, 2014, against the City of Reading, Chief of Police William M. Heim, Officer Madison Winchester, and John Does #1-20.  Compl., ECF No. 1.  He raised a 42 U.S.C. § 1983 Stigma Plus Due Process claim, civil conspiracy claims under 42 U.S.C. § 1985, a claim for Neglect to Prevent Conspiracy under 42 U.S.C. § 1986, a claim under Section 504 of the Rehabilitation Act, an FMLA claim, a claim under the Pennsylvania Whistleblower Law, 43 P.S. § 1423, and two state tort claims.  Compl.  Defendants filed a Motion to Dismiss all claims on May 29, 2014.  ECF No. 7.  Plaintiff responded by filing a First Amended Complaint on June 16, 2014, reasserting all but his state law claims.  ECF No. 10.

On June 30, 2014, Defendants filed a Motion to Dismiss the First Amended Complaint. ECF No. 11.  Inter alia, they argued that the City of Reading did not violate Section 504 of the Rehabilitation Act in requiring Plaintiff to sit for a "fit for duty" examination because there was no adverse action, that the Amended Complaint did not state an FMLA claim because Plaintiff failed to aver that the City denied him leave, discouraged him from taking FMLA leave, failed to restore him to his previous position, or that the City's alleged interference caused him to forfeit his FMLA protections to establish an FMLA violation, and that the Amended Complaint was void of any facts to suggest that the City's actions had any adverse effect.  Id.  On March 25, 2015, the Court granted the Motion to Dismiss.  ECF No. 29.  In addressing the Section 504 claim, the Court agreed that requiring Plaintiff to sit for the "fit for duty" test did not violate the Rehabilitation Act because ensuring an officer's fitness for duty is a business necessity vital to the operation of police departments.  Id. at 11 (citing Pennsylvania State Troopers Ass'n v. Miller, 621 F. Supp. 2d 246, 256 (M.D. Pa. 2008)).  As to the FMLA claim, the Court explained that Plaintiff's allegations that Defendants continued to harass him while utilizing FMLA leave confirms that FMLA benefits were not withheld, which was fatal to the interference claim.  Id. at 12.  The Court found that the FMLA retaliation claim failed because Plaintiff did not identify any changes to his employment status, let alone make a causal link to his invoking FMLA rights. Id. at 12-13.  Plaintiff's request for leave to amend was granted.

On April 13, 2015, Plaintiff filed a Second Amended Complaint, reasserting Section 504 claims under the Rehabilitation Act for discrimination and retaliation and FMLA interference and retaliation claims.  ECF No. 33.  Defendants filed a Motion to Dismiss on April 27, 2015, which is the subject of this opinion.  Plaintiff filed a Response on May 18, 2015.  ECF No. 37.

## III.    <u>STANDARD OF REVIEW</u>

In rendering a decision on a motion to dismiss, this Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  See <u>Phillips v. Cnty. of Allegheny</u>, 515 F.3d 224, 233 (3d Cir. 2008) (quoting <u>Pinker v. Roche Holdings Ltd.</u>, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted).  In <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), the Supreme Court recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  550 U.S. at 555 (citing <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986)).  In <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009), the Court subsequently laid out a two-part approach to reviewing a motion to dismiss under Rule 12(b)(6).  First, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  <u>Id.</u> at 678.  Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive the motion; "instead, 'a complaint must allege facts suggestive of [the proscribed] conduct.'"  <u>Id.</u>; <u>Phillips</u>, 515 F.3d at 233 (quoting <u>Twombly</u>, 550 U.S. at 563 n.8).  Second, the court must determine whether the complaint "states a plausible claim for relief, . . . [which is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  <u>Id.</u> at 678.  Only if "the '[f]actual allegations . . . raise a right to relief above the speculative level'" has the plaintiff stated a plausible claim.  <u>Phillips</u>, 515 F.3d at 234 (quoting <u>Twombly</u>, 550 U.S. at 555).  The defendant bears the burden of demonstrating that a plaintiff has failed to state a claim upon which relief can be granted.

Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005) (citing Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991)).

IV.   **ANALYSIS**

    *A.    Section 504- Discrimination*

Defendants argue that Plaintiff has not pled a prima facie case of disparate treatment under Section 504 of the Rehabilitation Act because he is not disabled for purposes of Section 504, he is not qualified to work as a police officer regardless of an accommodation , and the fit for duty exam was not an adverse action.  Defs.' Mot. Dismiss 5-10.  Plaintiff responds that he has pled disability because he alleges that he was regarded as disabled and, further, that his allegations that he was forced to take stress leave constitute anxiety that may be considered a disability.  Pl.'s Resp. Defs.' Mot. Dismiss 5-7.  Additionally, Plaintiff contends that he was qualified and that if Defendants claim that the fitness for duty exam was a business necessity, it is their burden to establish the same.  Id. at 7-8.

"The Rehabilitation Act forbids employers from discriminating against persons with disabilities in matters of hiring, placement, or advancement."  Shiring v. Runyon, 90 F.3d 827, 830-31 (3d Cir. 1996).  The McDonnell Douglas framework is applicable to discrimination claims under the Rehabilitation Act.  Wishkin v. Potter, 476 F.3d 180, 185 (3d Cir. 2007) (discussing McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)).  Under the McDonnell Douglas burden shifting paradigm, the plaintiff must first make a prima facie showing of discrimination.  Wishkin, 476 F.3d at 185.  "A prima facie case of disparate treatment under the Rehabilitation Act requires proof that the plaintiff is [1] disabled, [2] qualified to perform the essential functions of the job, with or without reasonable accommodations, and [3] suffered an adverse employment action due to discrimination."  Gillette v. Donahoe, 622 F. App'x 178, 181

(3d Cir. 2015); <u>Shiring</u>, 90 F.3d at 831.  "The plaintiff must make a prima facie showing that reasonable accommodation is possible."  <u>Id.</u>

The standards used to determine whether Section 504 has been violated in a complaint alleging employment discrimination are the same as the standards applied under the Americans with Disabilities Act of 1990 ("ADA").  29 U.S.C. § 794(d).  "A person qualifies as 'disabled' under the ADA if he: (1) has a physical or mental impairment that substantially limits one or more of his major life activities; (2) has a record of such an impairment; or (3) is regarded as having such an impairment."  <u>Keyes v. Catholic Charities of the Archdiocese of Phila.</u>, 415 Fed. Appx. 405, 409 (3d Cir. 2011) (quoting 42 U.S.C. § 12102(2)).  <u>See also</u> 29 U.S.C. § 705(20)(B). "Major life activities means functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working."  45 CFR 84.3(j)(2)(ii).

Drawing all reasonable inferences from the Second Amended Complaint in the light most favorable to Plaintiff, the only allegations regarding disability, aside from the formulaic recitation of the definition of disability <u>see</u> Second Am. Compl. ¶¶ 101-104, are that Plaintiff "attempted to take 'stress leave,'" and that "he was utilizing time Defendants knew or should have known was qualified time under the Family and Medical Leave Act ("FMLA")," <u>id.</u> at ¶¶ 88-89.  Plaintiff does not allege that he was actually suffering from a medical impairment, although it is inferred that he was experiencing stress, does not specify the nature of the stress, does not allege that he received any medical treatment, does not allege that any major life activity was impaired, and does make any factual allegations to show a record of impairment. <u>See</u> <u>Amoroso v. Bucks County Court of Common Pleas</u>, No. 1:12-CV-871, 2014 U.S. Dist. LEXIS 41469, at *24-25 (E.D. Pa. Mar. 28, 2014) (finding that the plaintiff, who allegedly suffered from ADHD and from major depression and anxiety, and who was allegedly approved

7

for FMLA leave for a serious medical condition without specifying the nature of the condition, failed to sufficiently allege that she was disabled for purposes of the Rehabilitation Act because there were no allegations of a substantial limitation on one or more major life activities). Plaintiff's threadbare recital of the legal standard is not sufficient to survive the Motion to Dismiss.[1]

Moreover, "Courts routinely dismiss disability claims premised on work - related stress conditions which are temporary in nature." Kiser v. Potter, No. 3:10-cv-22, 2012 U.S. Dist. LEXIS 47631, at *21 (W.D. Pa. Apr. 4, 2012). In Kiser, the plaintiff's claim of disability was based on the "severe stress, anxiety, and depression" that he "allegedly suffered as a result on-the-job harassment." Id. at *19. The plaintiff alleged that "his 'stress disability . . . had [him] out of work from February through November 2007[.]'" Id. The Court concluded that because his claim was not based on a continuing disability, "Plaintiff is not substantially limited in a major life activity due the transitory nature of his alleged condition." Id. at *20.

Accordingly, the Court concludes that Plaintiff has not sufficiently pled a disability.

Next, to the extent Plaintiff alleges that he was "regarded as" disabled, he makes no factual allegations to support this theory in the body of the Second Amended Complaint; rather, the first mention of "perceived disability" appears in his recital of the elements of a cause of action under Count I. Second Am. Compl. ¶¶ 102-104. "An individual meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited under this Act because of an actual or perceived physical

---

[1]     Plaintiff cites Huiner v. Arlington Sch. Dist., No. 11-4172, 2013 U.S. Dist. LEXIS 138318 (D.S.D. Sept. 26, 2013), for the position that an employee's anxiety about getting fired is a disability under the ADA. However, in that action, the plaintiff asserted, which was confirmed with medical records, that her anxiety and associated panic attacks substantially limited her ability to maintain her nutritional needs as evidenced by a thirty pound weight loss, to care for her children, to work, and to sleep. Id. at *14-16.

or mental impairment whether or not the impairment limits or is perceived to limit a major life

activity." 42 U.S.C. § 12102(3)(A). "Simply alleging that an employer knew about a disability

is not sufficient to demonstrate that the employer regarded the employee as disabled." Amoroso,

2014 U.S. Dist. LEXIS 41469 at *24-25 (determining that the plaintiff , although alleging that

she made her employer aware of her ADHD, depression, and anxiety, failed to set forth any facts

to demonstrate that her employer regarded her as disabled (citing Keyes, 415 Fed. Appx. at 410.

Thus, Plaintiff's broad allegations are insufficient to support a "regarded as" claim. See Kiser,

2012 U.S. Dist. LEXIS 47631, at *22-23 (dismissing the plaintiff's Rehabilitation Act claim).

Having determined that Plaintiff cannot satisfy the first element of a prima facie case for

discrimination under Section 504, the Court need not consider the remaining elements.

Nevertheless, the Court notes that it dismissed Plaintiff's First Amended Complaint based

on Defendants' argument that requiring the fit for duty exam did not constitute a violation of the

Rehabilitation Act. See ECF No. 31 at 11 (citing Diaz v. City of Philadelphia, No. 11-671, 2012

WL 1657866, *13 (E.D. Pa., May 10, 2012), aff'd, 565 F. App'x 102 (2014); Davis-Durnil v.

Village of Carpentersville, 128 F. Supp. 2d 575, 580 (N.D. Ill. 2001) ("Especially in the context

of police officers, employers do not violate the ADA by ensuring that officers are

psychologically fit for duty."); Pennsylvania State Troopers Ass'n v. Miller, 621 F. Supp. 2d

246, 256 (M.D. Pa. 2008) ("ensuring members' fitness for duty is a business necessity vital to the

operation" of police departments)).  Plaintiff again alleges that he was unlawfully discriminated

against by being forced to attend a "fit for duty" examination without any legitimate basis.

Second Am. Compl. ¶ 103.  He attempts to distinguish Diaz as being decided on summary

judgment and asserts that Defendants' claim that the fit for duty exam is a business necessity[2] is

a factual determination.  However, Plaintiff forgets that he has the initial burden of establishing

an adverse action.  An involuntary fitness-for-duty exam, in itself, is not a materially adverse

action.  See Kamau v. East Penn Mfg. Co., No. 11-5317, 2013 U.S. Dist. LEXIS 27491, at *21-

22 (E.D. Pa. Feb. 28, 2013).  Plaintiff alleges merely that he was "very embarrassed and

humiliated" by having to undergo a fit for duty exam, Second Am. Compl. ¶ 66, but makes no

allegation that the exam produced any injury or harm.  Therefore, Plaintiff's argument is

unavailing.

       Plaintiff's alternative claim that he was treated in a disparate manner from his colleagues

because he was the only officer written up for leaving the jurisdiction while trying to apprehend

a wanted person is also insufficient to state a claim.  Second Am. Compl. ¶ 105.  Significantly,

there is no other reference to this alleged incident anywhere in the Second Amended Complaint,

there are no facts or dates regarding the incident, and Plaintiff was first hired by the City of

Reading in 2001.  This broad allegation therefore does not raise a plausible claim for relief.

       Plaintiff's discrimination claim under the Rehabilitation Act is dismissed.

**B.     *Section 504- Retaliation***

       Defendants assert that Plaintiff has not pled a prima facie case of retaliation in violation

of the Rehabilitation Act because there is no evidence of a causal link between his stress leave,

beginning in March 2014, and either the fit for duty exam in October 2013, or his placement on

administrative duty in November 2013.  Defendants contend that both the fit for duty exam and

Plaintiff's reassignment pre-dated his stress leave and that when he returned to work in

---

[2]      The Rehabilitation Act "recognizes that employers have legitimate interests in
performing the duties of their business adequately and efficiently. Employers cannot be obligated
to employ persons who are incapable of performing the necessary duties of the job." Shiring, 90
F.3d at 831.

September 2014, he was returned to his position in the video surveillance unit (administrative duty).  Defs.' Mot. Dismiss 10-12.  Plaintiff responds that Defendants' argument asks the Court to assume that none of the actions were made because of his stress leave, there is a factual dispute, and dismissal would preclude him from obtaining discovery to prove his claims.  Pl.'s Resp. Defs.' Mot. Dismiss 8.

"To establish a prima facie case of retaliation. . ., a plaintiff must show: (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." Krouse v. American Sterilizer Co., 126 F.3d 494, 500 (3d Cir. 1997).  See also Ozlek v. Potter, 259 F. App'x. 417, 421-22 (3d Cir. 2007) (applying the framework for analyzing a retaliation case under the ADA to a retaliation case under the Rehabilitation Act (quoting Krouse, 126 F.3d at 500)).  "To establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." Lauren W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007).

Plaintiff's alleged "protected employee activity" was his stress leave beginning in March 2014.  The first alleged "adverse action" was the fit for duty exam in October 2013, see Second Am. Compl. ¶ 103, which did not occur "after or contemporaneous with" the protected activity and therefore does not satisfy the second element of a prima facie case.

Plaintiff also alleges that Defendants fundamentally changed the conditions of his employment upon his return, which constituted adverse action.  Second Am. Compl. ¶ 108. Although Defendants allege that these changes occurred in November 2013, and merely

continued upon Plaintiff's return to work in September 2014, drawing all inferences in the light most favorable to Plaintiff, he alleges that the changes occurred after his return to work. Accordingly, at this stage, Plaintiff has met the second element of a prima facie case.

Nevertheless, Plaintiff cannot establish the third element of a prima facie case for retaliation under the Rehabilitation Act.  Approximately six months passed between Plaintiff's stress leave and his return to work; therefore, the temporal proximity between the protected activity and any adverse action upon his return is too far removed to establish a causal connection.  See New-Howard v. Shinseki, No. 09-5350, 2012 U.S. Dist. LEXIS 86063, at *77-78 (E.D. Pa. June 21, 2012) (finding that the amount of time that passed between the plaintiff's protected activity on July 29, 2005, and the alleged retaliatory action when the plaintiff returned to work on August 15, 2005, "was too attenuated in time to suggest that proximity in time alone can evidence a causal connection"); Duggins v. Appoquinimink Sch. Dist., 921 F. Supp. 2d 283, 292 (D. Del. 2013) (finding that the plaintiff offered "no other evidence to imply retaliation save for the immediacy of her demotion upon return, which is insufficient to form a prima facie case of FMLA retaliation").  Further, the only allegation in the Second Amended Complaint that could be construed as evidence of a pattern of antagonism is Plaintiff's claim that Defendants continued to harass him while he was on FMLA leave.  See Second Am. Compl. ¶ 89.  However, to establish a causal link, the intervening antagonism must have been a result of the protected activity.  See Robinson v. Southeastern Pa. Transp. Auth., 982 F.2d 892, 895-96 (3d Cir. 1993) (determining that a pattern of antagonism existed because the employer subjected the plaintiff to a "constant barrage of written and verbal warnings . . ., inaccurate point totalings, and disciplinary action, all of which occurred soon after plaintiff's initial complaints and continued until his discharge").  But, Plaintiff's allegations that they "continued" to harass him after taking

leave is evidence that the alleged harassment began prior to any protected activity. Accordingly, he has failed to allege a causal link between his FMLA leave in March 2014, and any alleged adverse action in September 2014. Plaintiff's retaliation claim under Section 504 of the Rehabilitation Act is therefore dismissed.

        **C.**      ***FMLA- Interference***

        Defendants argue that Plaintiff was not entitled to job restoration because he took more than twelve weeks of leave. Defs.' Mot. Dismiss 12. Plaintiff asserts that Defendants extended his stress leave by affording him additional time off from work, thereby providing him with greater benefits than those provided by statute, and that he is entitled to explore which blocks of time were attributed to FMLA leave. Pl.'s Resp. Defs.' Mot. Dismiss 11.

        The FMLA prohibits an employer from interfering with, restraining, or denying the exercise of or the attempt to exercise, any right provided by the Act. 29 U.S.C. § 2615(a)(1). To prove an FMLA interference claim, "a plaintiff must show that: (1) he was an eligible employee under the FMLA; (2) the defendant was an employer subject to the FMLA's requirements; (3) the plaintiff was entitled to FMLA leave; (4) the plaintiff gave notice to the employer of his intention to take FMLA leave; and (5) the plaintiff was denied benefits to which he was entitled under the FMLA." Atchison v. Sears, 666 F. Supp. 2d 477, 488 (E.D. Pa. 2009). An FMLA "eligible employee shall be entitled to a total of 12 work weeks of leave during any 12-month period." 29 U.S.C. § 2612(a)(1). Generally, an employee who takes FMLA leave shall be entitled, on return from such leave, to be restored to his prior position of employment, or to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment. 29 U.S.C. § 2614(a)(1). Where an employee is "unable to return to work upon the expiration of his FMLA leave, he cannot establish that his termination constituted interference

under the FMLA." Johnson v. Del. Cnty. Cmty. Coll., No. 15-01310, 2015 U.S. Dist. LEXIS 164774, at *15 (E.D. Pa. Dec. 9, 2015) (citing Katekovich v. Team Rent a Car of Pittsburgh, 36 F. App'x 688, 690-691 (3d Cir. 2002) ("If the employee is not able to return to work after twelve weeks, however, the employer may terminate the employee."))). Further, "the FMLA does not create a federal cause of action to enforce the voluntary employer policies of providing benefits that exceed those required by the FMLA." Panto v. Palmer Dialysis Center/Total Renal Care, No. 01-6013, 2003 U.S. Dist. LEXIS 5663, at *20 (E.D. Pa. Apr. 7, 2003).

Although the Second Amended Complaint does not allege that Defendants maintained a policy of providing benefits that exceed the FMLA, the Court can infer from the fact that Plaintiff was able to return to work after six months that such a policy existed. Additionally, while Plaintiff does not allege when his twelve weeks of FMLA leave were used, based on his allegations that Defendants interfered with his FMLA rights and drawing all reasonable inferences in the light most favorable to Plaintiff, the Court could find that he used FMLA leave during his final twelve weeks of leave. Accordingly, the Court cannot determine, at this stage, that Plaintiff is not entitled to relief.

### D.    *FMLA- Retaliation*

"To prevail on a retaliation claim under the FMLA, the plaintiff must prove that (1) [he] invoked [his] right to FMLA-qualifying leave, (2) [he] suffered an adverse employment decision, and (3) the adverse action was causally related to[his] invocation of rights." Lichtenstein v. Univ. of Pittsburgh Med. Ctr., 691 F.3d 294, 301-02 (3d Cir. 2012). "The requisite causal connection can be established by (1) temporal proximity between the protected activity and the adverse employment action, (2) circumstantial evidence of a 'pattern of antagonism' following the protected conduct, or (3) where the proffered evidence, looked at as a whole, suffices to raise

14

the inference." Innella v. Lenape Valley Found., No. 14-2862, 2015 U.S. Dist. LEXIS 171671, at *29-30 (E.D. Pa. Dec. 23, 2015) (quoting Kachmar v. Sungard Data Sys., 109 F.3d 173, 177 (3d Cir. 1997))).

Although Defendants assert, as they did regarding the FMLA interference claim, that the FMLA retaliation claim fails as a matter of law because their failure to restore Plaintiff to his position occurred after his twelve weeks of FMLA leave had elapsed, this fact is not fatal to the retaliation claim. See Donald v. SEPTA, No. 13-0440, 2014 U.S. Dist. LEXIS 103670, at *20-22 (E.D. Pa. July 29, 2014) (explaining that a plaintiff's termination after he had used FMLA leave could still constitute an adverse action under the FMLA even if he was not entitled to reinstatement under the FMLA (quoting Fleck v. WILMAC Corp., No. 10-05562, 2011 U.S. Dist. LEXIS 54039 (E.D. Pa. May 19, 2011))). Nevertheless, for the reasons set forth above regarding the retaliation claim under the Rehabilitation Act, Plaintiff has failed to allege sufficient facts to establish a causal connection. The claim is therefore dismissed.

### E.    *FMLA- Individual Liability*

Defendants assert that Plaintiff has not stated a prima facie case for a violation of the FMLA against Chief Heim because there are no facts to suggest that he was responsible for any alleged FMLA violation. Defs.' Mot. Dismiss 13-15. Plaintiff responds that Defendants do not argue that Chief Heim lacked sufficient control to make him an employer within the meaning of the FMLA. Pl.'s Resp. Defs.' Mot. Dismiss 9-10. See Kilvitis v. County of Luzerne, 52 F. Supp. 2d 403, 412 (M.D. Pa. 1999) (determining that the FMLA's definition of an "'employer' as, inter alia, 'any person who acts directly or indirectly in the interest of an employer to any of the employees of such employer,' . . . evinces an intent to provide for individual liability" (quoting 29 U.S.C. § 2611(4)(A)(ii)(l))).

"[A]n individual is subject to FMLA liability when he or she exercises supervisory authority over the complaining employee and was responsible in whole or part for the alleged violation while acting in the employer's interest." Haybarger v. Lawrence County Adult Prob. & Parole, 667 F.3d 408, 417 (3d Cir. 2012) (applying the economic reality test). "[S]ome of the relevant factors in ascertaining the economic reality of the employment situation include whether the individual '(1) had the power to hire and fire the employee[], (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.'" Id. at 418 (quoting Herman v. RSR Sec. Servs., 172 F.3d 132, 139 (2d Cir. 1999)).

The only remaining FMLA claim is for interference and the only FMLA benefit that was allegedly denied relates to Plaintiff's restoration to his prior position of employment. The Second Amended Complaint contains no factual allegations against Chief Heim in this regard; however, it refers to earlier incidents in which Chief Heim referred Plaintiff to the Department's psychologist, which included a fit for duty exam, and placed him on administrative duty.[3] Second Am. Compl. ¶¶ 57, 64, 84. Plaintiff also alleges that Defendant Heim is an employer as defined in the FMLA, 29 U.S.C. § 2611(4)(A)(i)-(iii).[4] Id. at ¶ 7. Accordingly, at this stage, Plaintiff has alleged sufficient facts that would subject Chief Heim to individual liability. Compare Freeman v. Phila. Hous. Auth., No. 12-1422, 2012 U.S. Dist. LEXIS 112031, at *25-30

---

[3]  To the extent Plaintiff alleges Chief Heim assigned him to the video surveillance unit in November 2013, thereby placing him on administrative duty, if Plaintiff was restored to this same position when he returned to work in September 2014, then his FMLA claim would fail because he was restored to the same position he was in at the time he took stress leave. This allegation is therefore not being used as evidence that Chief Heim interfered with Plaintiff's FMLA benefits, but as an example of his authority as an employer.

[4]  An "employer" is defined to include "any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer." 29 U.S.C. § 2611(4)(A)(ii)(I).

(E.D. Pa. Aug. 8, 2012) (finding the allegations against the defendant "sparse at best" and commenting that the complaint did not discuss the defendant's "role in the company and authority over Plaintiff's employment").

**V.**     **CONCLUSION**

For the reasons set forth herein, the Motion to Dismiss is granted in part and denied in part.  The Motion to Dismiss Plaintiff's FMLA interference claim against the City of Reading and Chief Heim is denied.  The Motion is granted in all other respects and the remaining claims are dismissed with prejudice.  Because Plaintiff was previously given an opportunity to amend his complaint to address the deficiencies outlined herein, the Court finds that granting further leave to amend would be futile.  See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002) (holding that leave to amend should be granted "unless amendment would be inequitable or futile").  Based on the concession from Plaintiff, the request for punitive damages is also dismissed.

A separate Order will be issued.

BY THE COURT:

_/s/ Joseph F. Leeson, Jr._____
JOSEPH F. LEESON, JR.
United States District Judge

17